WM. H. BROTHERS and others *v.* THE COMMISSIONERS and SHERIFF of CURRITUCK COUNTY.

There is nothing in the Constitution of the State, which prohibits the Commissioners of a county from taxing polls to pay a county debt incurred before 1868; and there is nothing in that instrument, fixing a maximum of taxation for such purpose.

(*Street and others* v. *Commissioners of Craven,* at this term, *ante* 644 cited and approved.)

SETTLE J. dissenting.

CIVIL ACTION, being a Motion to dissolve an injunction, heard before his Honor, *Poole, J.,* during the Fall Term, 1871, of the Superior Court of CURRITUCK county.

The following is the case as settled and sent up to this Court:

The plaintiffs applied for an injunction, restraining the defendants from collecting certain taxes, and his Honor directed the restraining order to be issued by the Clerk upon his taking the proper bonds, &c., and that defendants should be notified to appear and show cause, &c. Defendants appeared and insisted that the injunction should be dissolved, for the following reasons:

1. That the bond was insufficient, for the reason that there was but one surety. This the Court overruled, and the defendants excepted.

2. That the security, although he had himself justified, was

Brothers *et al. v.* The Comm'rs and Sheriff of Currituck Co.

insufficient. Evidence being submitted by defendants, to show that the security was insufficient, and by the plaintiffs to the contrary. His Honor adjudged that that the security offered was sufficient, upon which defendants again excepted.

The Court found the following facts : The county of Currituck, before the war and by proper authority, had issued coupon bonds to the amount of fifty thousand dollars, running thirty years, with interest payable semi-annually. A large amount of interest had accrued and many suits had been brought to recover the value of the coupons. Judgments were obtained, and a peremptory *mandamus* issued to the Commissioners, to levy a tax to pay the same. In obedience to this peremptory writ, and by a special Act of the General Assembly, a special tax of five thousand dollars was levied to pay the interest. In levying this tax, the Commissioners governed themselves by the equation of taxation, and levied the same amount upon the poll as upon every three hundred dollar's worth of property. The result of this levy was that the poll tax, including the poll tax levied for school purposes and for the maintainance of the poor, exceeded largely the sum of two dollars on the poll. His Honor being of opinion that this levy of a poll tax exceeding two dollars on the poll, was unconstitutional, and that no poll tax of any amount could be levied for any other purpose, save that of carrying on the public schools and maintaining the poor, as to the excess, directed the injunction to be made perpetual, restraining the defendants from collecting any excess of two dollars on the poll.

From this judgment, defendants appealed.

*Attorney General Hargrove*, for appellants.
*Busbee & Busbee*, contra.

Rodman, J. The questions presented in this case, are all decided in the case of *Street* v. *Commissioners of Craven, ante* 844, at this term, with one exception.

The levy was there objected to, because the Commissioners

had laid no tax, or a merely nominal one on polls, and two
dollars on the one hundred dollars value of property, to pay
a debt of the county incurred before 1868. Here the objec-
tion is that the Commissioners have laid a tax on polls in the
proportion to that on property which the Constitution pre-
scribes for ordinary State and county purposes. In that case,
it was held that it was not the intention or effect of the Con-
stitution, to impose any restraints on the power of the county
authorities, either in the way of limitation of the maximum, or
in the way of proportion or equation between the taxes on polls
and property, but that they had a discretion. Consequently
the levy in that case was held good. As there is nothing in
the Constitution, which prohibits the Commissioners of a
county, from taxing polls to pay a county debt incurred before
1868 : so there is nothing fixing a maximum of taxation for
such a purpose. The obligation to pay the debt is recognized;
all the subjects of taxation are liable to it, and it is within the
discretion of the Commissioners to regulate assessment both as
to amounts and subjects, according to their views of equity and
good policy.

PER CURIAM. Injunction dissolved and case remanded.
Defendants will recover costs in this Court.

SETTLE, J., (*dissenting.*) I do not concur in the opinion of
a majority of the Court, that the county commissioners may
exceed the limit of two dollars on the poll for the purpose of
paying the indebtedness of the county existing previous to the
adoption of the present Constitution, or indeed for any other
purpose.

" The State and county capitation tax combined shall never
exceed two dollars on the head." " The proceeds of the State
and county capitation tax shall be applied to the purposes of
education and the support of the poor." Constitution, art. V,
secs. 1 and 2.

It is clear that the limit of two dollars on the poll cannot

be exceeded for the payment of any debt, State or county, contracted since the adoption of the Constitution, for the whole of the poll tax is specifically appropriated to the purposes of education and the support of the poor.

And it is equally as clear that it was the intention of the framers of the Constitution that no part of the poll tax can be applied to the payment of the old State debt, as it is called, for they ordained, art. V, sec. 4, that " The General Assembly shall by appropriate legislation and by adequate taxation, provide for the prompt and regular payment of the interest on the public debt, and after the year 1860, it shall lay a specific annual tax upon *the real and personal property* of the State, and the sum thus realized shall be set apart as a sinking fund, to be devoted to the payment of the public debt."

In other words, the State cannot tax the poll for the payment either of the new or of the old State debt. Nor can the county tax the poll for the payment of new county debts, because the poll tax is otherwise specifically appropriated by the Constitution.

And yet the opinion of the majority holds that the county may tax the poll for old county debts, notwithstanding it is ordained by art. V, sec. 7 of the Constitution, that " The taxes levied by the commissioners of the several counties for county purposes shall be levied in like manner with the State taxes, and shall never exceed the double of the State tax except for a specified purpose, and with the special approval of the General Assembly."

It is true that by the recent amendments, section 4 of art. V, is stricken from the Constitution, but that does not affect this case, nor does it in my opinion affect in the least degree the argument. It is evident that the only reason for striking this section from the Constitution was to avoid levying taxes for the payment of either the interest or the principal of the State debt. No one ever supposed for a moment that striking out this section would affect in any degree the tax on the poll.

It cannot be said that as you could tax the poll previous to

the adoption of the present Constitution, and when the old county debts were contracted, that you cannot now take it away from the subjects of taxation, because you would thereby violate the obligations of those contracts, for it is a well established principle that you may diminish the subjects of taxation without impairing the obligation of contracts, provided you leave enough from which the taxes may be raised, and the Constitution does leave all the property of the State, which is amply sufficient.

It is manifest to my mind that the spirit of the Constitution requires that the taxes be taken from the poll, except to the extent of two dollars, to be applied to the purposes of education and the support of the poor, and be placed upon the property of the State. It is at least an ungracious exercise of sovereignty to tax a man's head, especially when he has nothing else to tax. But perhaps it would all be well enough, provided all the taxes thus collected be applied to the wise and humane purposes prescribed by the Constitution.